Thank you and good morning. Your honors, Billy Joel Hovick brings this appeal from a ruling by Judge Walters granting the defendant's motion for summary judgment on the grounds of qualified immunity. The statute in question, your honor, is Iowa Code Section 232.71b sub 4 sub e. And the language of that statute and the provisions are very important. It provides that an interview of the person alleged to have committed child abuse, that the person's identity and location are known, will afford the person the opportunity to address the allegations of the child abuse report. The interview shall be conducted or an opportunity for an interview shall be provided prior to a determination of child abuse being made. The court may waive the requirement of the interview for good cause. And in accordance with qualified immunity, the Eighth Circuit in the Columbia Public Schools case provides that she may identify existing circuit precedent involving sufficient similar facts that squarely govern the situation or a plaintiff may point to a robust consensus of cases or persuasive authority establishing the facts of her case make out a violation of a clearly established right and finally a plaintiff may show in rare instances that a general constitutional rule applies with obvious clarity to the facts at issue and carries the day for her. As Judge Walters noted, the purpose of the interview shall be provided to the person with an opportunity to explain or rebut the allegations. And that's his ruling, I believe on page four. The statutory framework is designed to give the accused a meaningful opportunity to be heard. If the Iowa legislature used the term shall, it makes the meaningful opportunity to be heard mandatory. Your honors, the statutory text and objective could not be more precise and clear. Due to the serious nature of the allegations and foreseeable consequences of being placed on the child abuse registry, the government shall provide a meaningful opportunity of the accused to be heard and rebut the allegation. Mr. Lippman, this is Judge Smith. Why wasn't the opportunity reasonable when there was contact between the state and the HOVIX indicating that there had been an allegation and informing them of the necessity and opportunity for an interview, but that because of the seriousness of the charge, law enforcement should be or could participate and be helpful for them to participate in the interview. And apparently things scheduling wise didn't work out between counsel for your clients and the state and the 20 day period rolled over into another 20 days. And it seems there was an attempt, a reasonable effort, or at least some effort to try to arrange an interview. Why does that constitute a complete lack of provision of an interview? Because it seems as I understand, the concern would be if suspected abusers could indefinitely delay the founding of an abuse allegation by consistently delaying the arrangement of an interview. So at some point, doesn't the state have to act? I would agree. I would absolutely agree that the question really is a factual question is who dropped the ball here? Was the ball dropped by the HOVIX or their lawyer or was it dropped by the state? I think that in this case, it was dropped by the state. I mean, the HOVIX lawyer was trying to arrange for the interview. They were doing everything. Number one, the HOVIX lawyer was never told about the deadline. They didn't know how many days had elapsed since the allegation was made. In fact, and I'll get to this later in the argument, the HOVIX didn't even know what the allegations were. They just knew that there was a child abuse allegation made. They didn't even know the particulars of the allegation. They didn't know when it was made. They didn't know the time limits. They weren't giving any of that information. And I think the factual record is that really the department dropped the ball here. It wasn't the HOVIX attorney. But in any event, that's a factual determination. I think that we would rely on the courts, the way the court laid it out and the way we laid it out in our statement of facts, that this was really not on the HOVIX, it was on the department. So I think that that's, but again, Your Honor, that's getting into the nitty gritty of the facts. But in any event- Well, then would you do this for me? Would you cite us the clearly established law that would have put the defendants on notice that they were in violation of the HOVIX constitutional rights? Sure. And we cite in our case, in our brief, both the reply brief and the first brief. And the cases that come down that we've cited interpret the statutes that are involved. In each one of the cases that we cited, the underlying pinnings of the case is the opportunity to know the charges and an opportunity to be heard. Some of the statutes, Your Honor, involve full-blown hearings and some of the statutes involve administrative hearings. Well, which case has facts like these? Because that seems to be the standard that the Supreme Court has obligated federal courts to use in terms of evaluating the existence of controlling precedent or precedent that would have put government officials on notice. What case with facts like these produces the result that you seek? Well, Your Honor, the Iowa statute, to the best of my knowledge, has never been up for consideration. But when we look at the cases that we cited, and I can go to the brief, Your Honor, but the cases that we cited were cases involving statutes where there was a requirement for hearing or there was a requirement for an administrative proceeding. The Iowa statute, Your Honor, is so basic. The only thing the Iowa statute requires is the opportunity for an administrative proceeding. I've just got some questions about your argument. I mean, you start with the word shall, which you're saying is mandatory. Yet, you know, there's case law all over the country that talks about shall being mandatory or permissive under different circumstances. It doesn't mean must. And so we start with that. You've got an official. They can't know whether shall means must or shall means may when even the judges can't figure out when it should apply for starters, right? So that kind of undermines clearly established. The second part, and I get where the common belief of lawyers is that shall means must because someone told you that in law school. But if you go around looking at the cases, you're going to find a lot of cases where our court and other courts have said that isn't the case. Set that aside, though. What I'm really looking at is this. It looks to me like this Iowa scheme really presents a preliminary investigation that during the course of that investigation, statements are taken and ultimately a determination is made that something is founded or unfounded. Then it sets forth a process for appeal and a more substantial hearing, I think, right? So why are the cases where you're talking about administrative hearings and trials applicable at this preliminary stage where the finding is only founded, unfounded? No, that's a good question. The reason why they're applicable to the stage is they're evaluating a statute, as I understand it, at the same stage. Some statutes in some states require at the outset that before someone's placed on the registry, they're entitled to the full-blown hearing or the administrative law hearing. This case- Is that required by due process, do you think? Yes, by due process. All the cases that we cited come back to the ability to know what the charges are and the ability to rebut them. In this case, in the facts of this case- Does it matter that the finding of unfounded or founded is not publicly available at that stage? I don't think it is, and let me tell you why. Because in this case, the effect that it had on Billie Jo Hovic was profound. She, and the department knew, because obviously they knew when they put in place these challenging kids in their care, that she was a foster parent that was involved in the system. She's mandatorily self-reporting what happened. So as it applies to Billie Jo Hovic, yes. Whether this is public or not is really not relevant. The question is that she, being on the registry, lost her job. And that's what's important. She had to self-report this. And Boys Town had the ability to search that registry and make that self-report. That's another violation. You know, if we look at stigma plus claims generally, they apply to employees of the government. They apply to independent contractors with the government. And it appears that in this case, Miss Hovic was an employee of an independent contractor. And if so, why? I think it is, because as an employee of an independent contractor, she was a frontline worker in the system. And that's who this applies to. I mean, the contractor itself would never really be an issue under the statute. It's the frontline worker who's subject to the provisions of the self-reporting. It's individuals. It's not it applies to Billie Jo Hovic. She is the contractor, or the independent contractor, through Boys Town. Your Honor, it's important in this as well, is at the time that the initial founded allegation was made against the Hovic's, it's important to note that there was no information that was new to the department between when it was unconfirmed and when it was initially founded. But Billie Jo Hovic didn't even know what the allegations were against her. Billie Jo Hovic was never provided the details of the allegations or the specifics until her post-deprivation interview, which took place six days after her name was placed on the registry. She was merely known about the existence of an investigation, which by itself, even without the opportunity to be heard, offends the notion of due process, that she's not been made aware of what the particulars are of the allegation. And I think the Eighth Circuit made it clear in the Schmidt case in the United States Supreme Court, made it clear in the Mullane case, mostly after the proposition that the fundamental requirements of due process is notice of such a nature as to reasonably convey the required information and the opportunity to be heard. She wasn't even conveyed the required information before she was placed on the child abuse registry at that time. So even without the ability to be heard, she didn't even know what the allegations were. I mean, that's what the factual record is. It's important also to know from a factual standpoint that the court talks about the burdens. Now this 20-day, you know, it continues that that keeps happening. This is Jed Smith. You're within your rebuttal. You've got about a minute and a half. You can continue and use up the remainder or you can save what you have left for rebuttal. I just wanted to make sure you're aware. Thank you. I'll save the rest for rebuttal. All right. Thank you, Mr. Whitman. Ms. Kramer. Good morning, your honors. May it please the court and counsel. DHS has a robust process for assessing child abuse for providing the opportunity for an interview for persons who've been accused of child abuse and after their decision is made, whether or not it was founded or confirmed in individuals are offered the opportunity to appeal that to an administrative law judge, that decision can be appealed to the director of DHS and then that decision can be taken up on judicial review. So there's quite a robust process available. When were the Hovix first notified that they had a right to an interview or that going on and opposing the allocations? Your honor, I believe the record reflects that on January 3rd, Billy Joe Hovix was contacted by a DHS worker with a request to set up an interview. The same day, the DHS worker spoke with her counsel about the request to set up an interview and then the DHS worker followed up again on January 16th, which is about two weeks later. When were they notified that there was an investigation? At that day. And I believe that the DHS requirements is that they be afforded the opportunity for an interview and the concern of the department with the position, the legal position that counsel is advocating is that if alleged abusers can simply defer and delay the opportunity for an interview, the department can never close out its findings. There are some people who don't respond and who say that they will respond and don't follow up. Here, the district court credited counsel with a mistake. Not only the first time counsel said they would set something up on January 3rd, but the second time when follow-up was made on January 16th. And certainly mistakes happen, but we would assert that this was not the mistake of the department, that the Hobicks did have an opportunity. They had an opportunity to learn more. They had an opportunity to share their perspective. And because of that, the department was appropriately moved the case along to found it. I'd also like to address the fact that- a period of time. I mean, is it in every case that if there's no interview by a certain date, that the allegation is founded? Under the department's rules and the code, they have to make a decision within 20 days. The first time that 20-day period came up, they decided that it was not founded because they had not yet provided the opportunity for an interview to the Hobicks. The second time the 20-day period came up, they determined that it was founded because the opportunity for an interview had been provided. The process is called an addendum, and the district court described that very well. I would also like to discuss the fact that this was private employment. This was not government. Before we get to that, does the policy allow for an indefinite number of 20-day extensions, or is it just that you have one? The policy allows for the practice of addendum. Certainly, it's discouraged to have multiple, but the law doesn't really specify that there's an outer limit of the number of times a case- It wouldn't have been against policy if, in this case, the defendants had asked for an extended, an additional 20 days, understanding that there was already an attempt being ... That there was a process, an attempt to attend an interview. I do think that happens. I think it's discouraged. DHS workers are encouraged to complete the assessment work within the time frames and to, if an extension is needed with an addendum, to keep those as limited as possible. I would also talk about the facts a little bit. The facts of this case are very similar to the Natalie Finn case, which we cited in our brief, which came out of this very same service area, where a teenage girl starved to death, literally feet away from a stocked kitchen full of food. The allegations at issue in the Hobux case were very similar to those allegations, and they should have been taken very seriously by the department. One of the issues in the Finn case was the use of addendums. The mother in that case kept saying she would schedule an interview and didn't. That happened within about the same time frame, so I believe DHS would be sensitized by that very tragic death and want to move forward on this case. But there was no concern for that in this case, was there, when the child was ... The children were already out of the home? Correct. Correct. But I do believe that the need to move forward with the assessment and to do it expeditiously is something that the department works for. They could have made the decision to extend the addendum another time, crediting two previous attempts that didn't come to fruition, and they chose not to. To the extent that that was a choice they made, I would assert that that was protected by qualified immunity, to the extent that the court finds that that was an error or a mistake on the department's part in not seeking yet another addendum. I believe that would be protected by qualified immunity. With respect to the decision of Boys Town to terminate Ms. Hovick's employment, the department also has a process called record check evaluation, which is described in the briefs. I don't know if particularly the code is cited. It's at Iowa Code 135C.33. There, if someone is on the child abuse registry that has an employment need for work that would be barred by the position on the registry, you have to explain to the department what happened and why it's not going to be a barrier. Then the department makes a determination of whether or not that person can hold that is not an automatic bar to employment. There's yet another procedure and process available, and I don't believe that Ms. Hovick availed herself of this process. To the extent that due process is at issue here, I think that additional safeguard is important. I would also invite the court's attention to the May versus Independence Association case from the First Circuit. That's at 684 F3rd 226. That's from 2012. Again, asserts that stigma plus in the loss of a job context that government beneficiaries, government benefits need to be the plus that's lost, not private employment. Here, the district court made a reasonable conjecture, but one without cited authority, that even though it was private employment, that that was enough. I would question that and at least invite the court's attention to that and invite the Eighth Circuit's opportunity to weigh in on whether or not stigma plus applies to private employment. The interesting thing about that is there is independent contractor language that's been applied in other cases. The question I've got is just what are the outside parameters of who is an independent contractor, which I asked Mr. Lipman. Do you have a position on that? I mean, I know your position generally is whatever Boys Town is, it's not an independent contractor and that it's not covered. It's private employment, but let's assume for the moment that we think that Boys Town, because of its relationship with that it is somehow an independent contractor. I guess I would think of the independent contractor being like persons who worked for the state in an independent contractor capacity instead of an employment capacity. For example, a physician. A physician could be an employee or a physician could be an independent contractor. It makes sense to me that you would consider those both in the same way. Here it's one step removed. The department doesn't get to determine whether or not Ms. Hovic is employed by Boys Town. Boys Town gets to determine that. I think that should be considered private employment. Thank you. I also want to address to the extent that there were discussions that the lawyers weren't told about these deadlines. Well, lawyers should know to ask is there a deadline? Also, when the department spoke with the lawyer, that should be an opportunity for the lawyer to look up the rules around assessments, child abuse assessments. Timeframes are encoded in rule. Ignorance of the law is generally not considered an excuse. I believe the record here shows that they didn't know they could have. And so I would suggest that that is not a fault of the department, but simply an unfortunate event in this particular set of circumstances. I am concerned that if- Are you saying the statute puts no responsibility on the state to notify parents suspected of abuse of the deadlines for participating in an interview that they have a right to? I think it also puts a responsibility on others to ask, is there a deadline? That was my argument. I don't know that it says one way or the other. I don't believe that the statute provides an obligation on the part of the department. But it also would be reasonable to ask to find out if there's a particular timeframe in which this needs to be accomplished. Is it your opinion that this somehow creates a legal obligation in the same sense like in sort of a UCC context that you are on inquiry notice if you're the lawyer? Is that your argument? I'm merely trying to rebut the assertion that the department was dilatory and that the department had the responsibility to not only contact the attorney and the HOVIX repeatedly, but also to let them know that there was this deadline and to contact them again and to make sure that they were aware that they needed to participate by a certain deadline. I'm merely trying to rebut those assertions. I think there were some missteps here and obviously that's very unfortunate. I would also note that it was all pretty quickly remedied to the extent that we're talking about a fairly significant shift in the department's practice if plaintiff's counsel's way carries the day. Here the addendum process was invoked again to change the finding after the interview. And so certainly it was stressful for Ms. HOVIX and the 13 days she was without employment are not insignificant. It was remedied and that's the purpose of due process, right? So we can fix things that go awry. It seems the operation, if I understand the operation of the statute, was it the state was in essence prohibited from making a declaration of a founded allegation without offering this opportunity? Yes, that is correct. Well, Ms. Bradford, that seems to put the onus on the state and not the individual to find out whether the time period is what the time period is and when it starts. And I believe the state gave the HOVIX and their counsel repeated notices of the opportunity for an interview. Judge Woolman, was there a question? I was just going to say easy for you to say there's sort of a no harm, no foul argument, but to put that aside, early in your argument you were used the word robust and what were you describing? The department's processes around child abuse assessment due process, there are a to appeal findings that they disagree with. My question is when did this, for want of a better term, when did this robustness appear or make itself manifest? In other words, did this HOVIX know early on what they had to say? They were notified of the opportunity for an interview and requested an interview and they contacted their counsel. Had there been a finding, had the addendum process maintained the finding it founded, they would have received notice of the procedures under which to file an appeal. Because it was not founded, the process ended. I thank you for your introduction. If nothing further, I thank the court and counsel. Thank you, Mr. Kramer. Mr. Lippman. Yes, your honor, I don't want to dwell on the facts too much, but if you look at page 11 of our brief, it gives a timeline. The first time HOVIX knew that there was an allegation that they were being offered or trying to arrange an interview was on January 3rd. That's the only date that they knew that there was something that was against that. Between January 4th and the 15th, there was no communication between the department and the HOVIX. But on January 16th, HOVIX attorney offered an interview on January 17th or 18th. This was before the determination of being founded was made. So the attorney offered the HOVIX up before the determination of founded was made and within the 20 day period. Just real briefly, well, I see my time is almost up, but there was a question about absolute immunity. And I would just make the point that in this case, we don't think that that applies to qualified immunity standard. I think we addressed it in our brief and I see my time is up. Thank you, Mr. Lippman. Thank you also, Kramer. The court appreciates both counsel's argument to the court this morning. We will continue to review your materials and do the best we can with a resolution. Thank you, counsel. You may be excused.